Good morning, Your Honors. May it please the Court, my name is Kelly Volkar. I'm here on behalf of the United States. I would like to try to reserve two minutes for rebuttal. Okay, please watch your clock. I will, Your Honor. This Court should reverse and remand the District Court's granting of the motion to dismiss the indictment because the Court impermissibly relieved the defendant from satisfying his burden to meet the first two prongs of Section 13-2060 after finding he had satisfied the third prong. Under Palomar-Santiago and this Court's recent ruling in Portillo-Gonzalez, all three prongs are mandatory independent requirements. Counsel, let me ask you this. What's left of Mendoza-Lopez then in the government's view? Can you give me some examples of circumstances where the Court can deem the exhaustion requirements effectively satisfied? Yes, Your Honor. I believe in the government's brief we discussed, for example, if the non-citizen were not provided the information that he or she has the right to appeal at all. One can imagine a scenario where that would be, they may not even know that that is a possibility. And so that is an example of not knowing that the relief is available such that even though it is both a substantive due process, it would likely also satisfy the first two prongs. But isn't that what happened here, that the IJ misstated the availability of appellate review? No, Your Honor. Here, the IJ discussed the possibility of voluntary departure as a type of relief for Cardiel Ruiz and had a discussion about whether or not he would qualify for that. However, at the same time, in multiple different points during the immigration proceeding, the immigration judge repeatedly stated that Cardiel Ruiz had the opportunity to appeal. So you're saying that one situation under which we can deem the requirements effectively satisfied is if the judge says, well, you don't have a right to appeal. What about a misadvisement as to the scope of appeal? You were told to appeal, but the Court misadvised them in some fashion. Would that situation be covered? I do not think so, Your Honor. I do think that that's what Portillo-Gonzalez squarely foreclosed in the wake of Palomar-Santiago, that line of cases. I think Portillo-Gonzalez talked about if you're in an immigration proceeding, but we're simply talking about whether or not the immigration judge substantively described a type of relief correctly, then we are in the land where we want the noncitizens to pursue all of their rights that they may have, which include... But this isn't a situation in this case where the judge substantively misdescribed something or was incorrect in his substantive ruling, right? This is a refusal to rule at all based on a misunderstanding of whether he sought relief or not. Yes, Your Honor. So isn't that a distinction that would be recognized under Mendoza-Lopez? I do not believe so, Your Honor, in part because I think here the IJ talked about types of relief. Involuntary departure was one of them. Another was cancellation of removal, and that was what is a little bit confused in the immigration judge's proceedings with Cardiel Ruiz. However, at multiple different times, the immigration judge offered more time if Cardiel Ruiz wanted to speak with nonprofit immigration lawyers who might be able to better describe what relief he might qualify for. I don't know. It was kind of inexplicable what the judge did here because it seemed that Cardiel Ruiz did say that, yes, I want voluntary departure, and then the IJ misunderstood him and then said, well, since you didn't ask for voluntary departure, I won't make a decision about it. I mean, I think the IJ completely screwed up here. Your Honor, respectfully, I think that the IJ was trying to give Cardiel Ruiz different options and paths for relief. But he can't just not rule. He should have tried to understand what Cardiel Ruiz was asking for. I think that's the second major problem. I think the first major problem is that this was another one of those group hearings, and I've seen numbers of those, and there's always some miscommunication, misadvice, no attention to the plight of each individual and the circumstances surrounding each individual. And that's always bound to create errors and misunderstandings. And Your Honor, this started as a group proceeding. However, the second half of it where he was discussing Cardiel Ruiz, he was speaking, the judge was speaking one on one with Cardiel Ruiz at that time. He talked about the fact that his wife was a U.S. citizen, and perhaps he would want some time in order to seek getting a green card in that manner. And he multiple times said, if you'd like a couple of weeks to talk it over with an attorney with the Florence Project, and that was when Cardiel Ruiz said, I'd rather go to Mexico. And then he offered again, would you like some time to determine if you can file for cancellation or removal or anything, or would you like a deportation order? And Cardiel Ruiz said, I'll take the deportation order. So I do think that the facts of this case put it squarely into that category where the Palomar Santiago, the Supreme Court, wants non-citizens to avail themselves of all of the court processes they have to determine if the immigration judge got it wrong in those proceedings. But here, he just wanted to take the deportation order and chose not to appeal it. Would you concede that in Ross, Ross applies to situations where the administrative remedies are so confusing that a person can't actually make use of those remedies? And why wouldn't that apply here if the immigration judge says, I'm not making a decision about voluntary departure? How would Mr. Cardiel Ruiz understand that he was supposed to appeal a non-decision? How would he even know that there was even any available appellate review of a non-decision? Your Honor, that's where I would point this court to the Portillo-Gonzalez decision, which had a very, a nearly identical situation where the immigration judge may have misinformed the non-citizen of the potential for voluntary departure. And it analyzed in the last few pages of the decision exactly what Your Honor just asked, whether or not the Ross three exceptions would apply in this situation, such that the remedy of appeal or judicial review was unavailable. And this court found that this was not, that third category was more along the lines of threats, or intimidation, or hide and seek. And here, the IJ correctly informed Portillo-Gonzalez of his right to appeal, and Portillo-Gonzalez said that he would not like to appeal it. And that is nearly indistinguishable from the facts we have. But there are two different misstatements here, right? One is you're ineligible for voluntary departure, which turned out not to be accurate. But then the second one is I'm not making a decision on voluntary departure. So even though I might agree with you that the initial you're not eligible for voluntary departure is similar to Portillo-Gonzalez, the second issue of you don't have to appeal because I'm not making a decision is different, right? Perhaps, Your Honor. Although the latter statement comes after Cardiel Ruiz already said I'll take the deportation order. And I think the main thing here is whether or not the misadvisal of the potential eligibility for voluntary departure is of the type that it could infect the entire proceeding. Because what the immigration judge was offering for Cardiel Ruiz to appeal was the deportation order. When Cardiel Ruiz said I'll take the deportation order, he still had the opportunity to appeal that to see if there were any substantive errors in other aspects as well. The judge put him on notice of the fact that voluntary departure was an option and that cancellation of removal might be an option. So this is not in that line of cases where the non-citizen had no idea that such relief was even possible. But do you agree that Ross would apply where the administrative remedies are so confusing that a person can't make use of them? Your Honor, I think both Palomar-Santiago and Portillo-Gonzalez left open the possibility of the three exceptions in Ross applying. I don't think that it's been decided yet. We would argue that if this court were to follow, it should follow Portillo-Gonzalez in the conclusion as well, which is even if you apply the Ross exceptions, it is not met here. And if the court has no further questions at this time, I'd like to reserve some time for rebuttal. Okay. Good morning, and may it please the Court. My name is Stephen Kaninger from the Office of the Federal Public Defender. I represent Martín Cardial-Ruiz, who asked this court to affirm the District Court's order dismissing the indictment in this case. Your Honors, in Mendoza-Lopez, the Supreme Court announced a constitutional standard for assessing the validity of a defendant's waiver of the right to appeal during his immigration proceedings underlying the illegal reentry prosecution. And under that standard, the waiver is only constitutionally valid if it is both considered and intelligent. Mendoza-Lopez continued to hold that where that waiver is not considered and intelligent, that waiver renders direct review, and that includes his administrative appeal, unavailable, and it also completely deprives the non-citizen of judicial review. These holdings from Mendoza apply directly to the requirements of D-1 and D-2. That statute, 1326 D-1 and D-2, was enacted in reaction to Mendoza-Lopez, and Congress was legislating against that background. Let me ask you this, Counsel, because there's got to be something left, right, even in the wake of Palomar-Santiago. I guess I'm struggling to figure out whether the facts of this case is such that you can take advantage of whatever narrow, and it's very, very, very narrow to the extent that there's anything left where you don't actually exhaust all of the requirements under 1326 D. In this situation, is there any reason why the defendant couldn't have filed an appeal from the IJ's refusal to rule? It's not uncommon, as I'm sure you know, where judges just simply mishear something or misunderstand whether somebody asked for something or not, especially in a fast-moving record. So couldn't he have filed an appeal and say, look, I did ask for voluntary departure. The IJ misunderstood that, construed it as my not asking for relief and didn't rule on that. Couldn't that have been correctable on appeal as well as the other substantive errors and rulings? But Judge, when Mendoza-Lopez answers this question, and it tells us that the focus here is whether the appeal waiver is constitutionally valid. And in that case, the dissent, if you look to the dissent that Justice Scalia wrote in Mendoza-Lopez, he said, well, theoretically, the defendants could have appealed the errors that they're complaining of. But what the Supreme Court tells us is that the fundamental question with respect to availability and deprivation of judicial review is the constitutional validity of the appeal waiver. And so to answer your question, Judge, when that is what is certainly left here in the wake of Palomar-Santiago, Palomar-Santiago did not alter, it left intact those holdings from Mendoza-Lopez. And Mr. Cardial's appeal waiver in this case was constitutionally invalid for reasons in addition to the IJ's failure to advise him about voluntary departure. This goes, I think, to some of the questions that the panel had asked already. But the implication, he did say to him, you're not eligible for voluntary departure because of your two convictions, right? He did not say that he was not ineligible. Well, at one point he said, I don't think you would be eligible for voluntary departure. He was not speaking as to eligibility, Judge Wardlaw, with the IJ's, had a colloquy with the government counsel and then said, well, I'm not going to give you voluntary departure. I'm not going to grant voluntary departure. It's not a ruling that he was ineligible. It's that I'm not going to grant it. It's the type of statement that this court indicated in Melendez-Castro is affirmatively discouraged. Okay, so let's find, he said, I'll deny voluntary departure if I find you have a bad criminal record, bad immigration record. He says that up front. And then when he's addressing him in particular, you probably aren't going to get voluntary departure if you've got two convictions. That was wrong, correct? Because he assumed they were controlled substance convictions when they were actually misdemeanor DUIs. It's wrong as to, the judge is making, my reading of that, Judge Wardlaw, is that's an assertion of a discretionary, of the judge's ultimate decision. I don't see that as an assertion necessarily that he's ineligible. But if that's the way the court reads it, yeah, that's a problem as well. But what I wanted to draw the court's attention to is there are multiple reasons that the advisal in this case, that the appeal waiver in this case is constitutionally invalid and therefore satisfies D1 and D2. Perhaps the most problematic is something that you alluded to, Judge Winn, I believe when you asked about the scope, whether the immigration judge made a misleading statement about the scope of appeal. What's particularly problematic is that the IJ told Mr. Cardial during the group proceedings that his right to appeal applied to the decision of the court. That's at excerpts of Record 89. When the IJ solicited an appeal waiver from him, he said, do you want to appeal my decision? That's at excerpts of Record 97. But just moments earlier, the immigration judge, after telling him he wouldn't grant him voluntary departure, the immigration says, I'm not, and I'm quoting, sorry, since you didn't really ask for voluntary departure, I won't make any decision about granting or denying it. Because- I know this is, I'm asking you to speculate. But that's not- Yeah, this is second Judge Koh. I'm asking you to speculate. But why would the IJ want to refrain from making a decision? I don't know, Your Honor. And in fact, the district court itself found that this statement was perplexing. I find it exceedingly confusing. And what I'd like to point out for the court is if the district court, if the, I can't understand it, if the panel is confused, imagine the effect on Mr. Cardial, who is uncounseled, which is another reason that his, another factor favoring a finding that his appeal waiver was invalid, 20 years old and in immigration proceedings for the first time. The fact of the IJ's statements regarding I'm not making a decision is to tell Mr. Cardial that the issue of voluntary departure was not appealable. There is no decision for you to appeal. And so the effect of that, under those circumstances, this court cannot say that the appeal waiver was considered an intelligent, that it was constitutionally valid. And so under Mendoza-Lopez, when there is an unconstitutional appeal waiver, an appeal waiver that is not constitutionally valid, it satisfies D-1 because it renders an administrative appeal unavailable, and it satisfies D-2 because under, because it deprives a non-citizen of judicial review. Again, I'd like to also point out that in the context of establishing an invalid, whether the appeal waiver is valid, it's the government that bears the burden of demonstrating this by clear and convincing evidence. So the facts that we've just talked about now, on those facts alone, the government can't meet this burden. But there are... Well, counsel, if we construe, granted it's not the clearest advisement of the right to appeal, but the IJ did say you have a right to appeal my decision. If we construe that advisement as including the right to appeal the refusal to rule on involuntary departure, then you would lose? I don't think so, Your Honor. If you construe it, you still have to ask the fundamental question about whether the defendant's waiver of the right to appeal was considered an intelligent. And so the fact that he theoretically could have appealed, again, if you look at Mendoza-Lopez... Well, but it's inextricably intertwined, to use a familiar legal phrase, right? If the IJ is saying, well, you can go ahead and appeal. I wouldn't grant you voluntary departure under these circumstances, but okay, I don't think you asked for it, so I'm not going to make a ruling one way or another, and then goes on to handle the rest of the proceedings, okay, now you can go ahead and go and appeal. That's why I asked you, could you have appealed the IJ's right to refuse to rule on a voluntary departure? I just don't see why his appellate rights wouldn't include that. So if we construe the advisement as telling the petitioner and now defendant at the time, like, look, if you don't like anything that went on today, go ahead and take it up to a higher court. I don't think that's the... Under those circumstances, the petitioner has been told that he could appeal whatever went on, including the refusal to rule one way or the other on voluntary departure, right? If you construe it that way, that goes to the issue about whether the immigration judge properly advised him about the scope of his appeal. I disagree, obviously, respectfully, that that's what is being stated here when the judge is specifically telling him, I'm not making a decision, and that the advisal is you can appeal my decision, and the advisal at the group proceeding was your right to appeal as to my decision, not decisions that weren't made. But that leaves the question of the immigration judge's failures to properly advise my client about voluntary departure, which Portillo-Gonzalez does not foreclose this. Portillo-Gonzalez is addressing a particular type of error in which the immigration judge makes an affirmative misstatement about the law in a ruling, in a statement, in a decision. It's not addressing errors of omission. This was important in the context of Palomar-Santiago. I'd ask the court, if the court looks at the briefing in Palomar-Santiago, it's clear that the issue of whether an advisal about discretionary relief is not at issue there. And the court in Palomar-Santiago is not even addressing the question of whether the appeal waiver was invalid. The relevant portion in Palomar-Santiago is addressing the argument under Ross that as a general matter, immigration proceedings are so opaque that we can't expect noncitizens to know that the judge is wrong in their decision. In Palomar, there is a decision, there's notice to the defendant that there is a, to the noncitizen in that context, that there's a decision that might be wrong, that doesn't track to errors of omission like we have here, where the judge is required to get, constitutionally required to provide information. We don't hold defendants on the same level of notice in those circumstances for something that they're not told. There's no reason to expect it might be wrong when I'm not told about it. I see that I'm out of time. I know. I think Judge Koh might have had a question. I haven't been able to ask one question of this lawyer. May I ask one question? But it's fine if you want to go ahead. No, no. I was going to turn to Judge Koh, so go ahead.  The, the concern I have about this is that the judge specifically says that he would make a deportation order. Mr. Cardial-Ruiz says he will take the deportation order, and wouldn't the deportation order that the judge issued, after which he specifically said, you want to appeal my decision to a fair court, sir, and Mr. Cardial-Ruiz says, no, Your Honor, wouldn't that be the deportation order? That would be the subject of the appeal. And then at that point, Mr. Cardial-Ruiz could raise the voluntary departure eligibility issue. My concern is that the appeal advisement itself does not appear to be so confusing as to render an administrative appeal unavailable. And the other representation that was wrong was the ineligibility for voluntary departure is the exact same incorrect representation that was the subject of Portillo-Gonzalez. So, and if I look at the language of Palomar-Santiago, nothing in Bross, however, suggests that the substantive complexity of an affirmative defense can alone render further review of an adverse decision unavailable. Administrative review of removal orders exists precisely so noncitizens can challenge the substance of immigration judges' decisions. The immigration judge's error on the merits does not excuse the noncitizen's failure to comply with the mandatory exhaustion requirement if further administrative review and then judicial review, if necessary, could fix that very error. Do you have a response to that? I do. I think, number one, Judge Koh, the error in this case was not simply that the judge told my client that he was ineligible. He didn't make a ruling on ineligibility. He failed to tell him what voluntary departure was, what the eligibility requirements were, as the district court found, and, as the district court said, failed to tell him that he was  So, unlike Portillo, this isn't a substantive error of immigration law, a statement that you are ineligible. It's a failure to provide the relevant information to this noncitizen so that he could pursue that relief. And so, again, it's the... And you're saying that could not be appealed. That is unappealable. Is that your position, that those IJ errors are unappealable? No. What I'm saying is that that renders his appeal waiver invalid, just as it did in Mendoza-Lopez. And as Mendoza-Lopez instructs, the relevant inquiry is whether or not the noncitizen's appeal waiver was constitutionally valid because that's the intermediary step here, the intermediate step. The most important focus in Mendoza-Lopez is the constitutional validity of the appeal waiver. And so, where there is a failure to provide the information, not an affirmative error of law as there was in Portillo-Gonzalez, but a failure to provide the relevant information, the question becomes, and the question always is, is this a constitutionally valid waiver of appeal? And when it's not, as it was not here, Mendoza... The holdings of Mendoza direct that that renders... Under D-1, that renders administrative review unavailable, and it deprives the noncitizen of judicial review. And Judge Koh, you said, isn't it possible that he could have appealed that, but Mendoza rejected that exact argument from Justice Scalia in his dissent, suggesting that, well, you say that there was an invalid appeal waiver, but he could have appealed the bases for why the appeal waiver was invalid, or the underlying due process violations. The court rejected that in Mendoza-Lopez itself. Thank you very much. And I ask the court to please affirm the district. Thank you very much, counsel. Ms. Volkow? Volkow? Thank you, Your Honors. Judge Koh is exactly right, and that is that there may be instances where satisfying D-3 may also satisfy D-1 and D-2. We can find some in this court's history, times when the immigrant, when the noncitizen was not informed at all about the right to appeal or wasn't given those rights or his or her rights in the proper language such that they could understand. This is not that case. This is a case where Cardio Ruiz was told by the immigration judge repeatedly of what his rights were if Cardio Ruiz disagreed with the immigration judge's ruling. The immigration judge said, I can let you have more time to contemplate these other avenues of relief, which the immigration judge had stated to him, voluntary departure and cancellation of removal, and then, or I can give you a deportation order. And Cardio Ruiz stated, I'll take the deportation order. Then the immigration judge said, do you want to appeal? And Cardio Ruiz said no. This is an instance that's clearly covered by Portillo-Gonzalez and in Palomar-Santiago, which quotes from Palomar-Santiago, that if the immigration court judge might be wrong, that's exactly why we want noncitizens to take advantage of the appeal process. And with that, the United States asked this- I have one question. What are we to make of the fact that Mendoza-Lopez was applying 1326A, which is just the definition of the crime of illegal reentry, and was issued before 1326D, which have these three requirements, was enacted into law? Thank you, Your Honor. The government's position is, as the Supreme Court said in Palomar-Santiago, Mendoza-Lopez was the background that led to Congress enacting 1326D. The title of 1326D, as the Supreme Court noted in Palomar-Santiago, says Limitation on Collateral Attack. Congress reacted to Mendoza-Lopez by stating that noncitizens must follow each of the three prongs in every case. And the court has to do a independent analysis of each of those three prongs. And that is exactly the error that the government asserts the district court made here was simply not walking through each of those three prongs. And have you waived the argument that his proceedings were fundamentally fair? Your Honor, we- Assuming that the district court was correct, that his proceedings were fundamentally unfair. The government did not appeal on that ruling, Your Honor, and in the briefing we've assumed without conceding, but of course, we did not appeal on that ground. All right, thank you, counsel. Thank you. I thank both counsel today for an excellent argument. US versus Cardiol-Ruiz is submitted, and the session of the court is adjourned for today. All rise. This court for this session stands adjourned.
judges: WARDLAW, NGUYEN, KOH